UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHAWN RANDALL THOMAS,

                        Plaintiff,                    COMPLAINT AND CLAIM

-v-

CITY OF NEW YORK;
ERIC LEROY ADAMS;
KEECHANT SEWELL:                          **JURY TRIAL DEMANDED**
DYSHAWN M. PITT [Tax Reg # 949492];
MICHAEL J. BAROZ [Tax Reg # 963393];
TENZIN RIGSANG [Tax Reg # 971198];
KEVIN BARCENAS [Tax Reg # 970987];
NICHOLAS V. AZZOLINO [Tax Reg # 964903];
ANDY HERRERA [Tax Reg # 971997];
MICHAEL P. DUNIGAN [Tax Reg # 948921];

                        Defendants.
--------------------------------------------------------X

      Plaintiff, SHAWN RANDALL THOMAS, brings this claim complaining of the

defendants, respectfully alleges as follows:

## NATURE OF ACTION

1.    This action is brought by Shawn Randall Thomas, sui juris, hereinafter Plaintiff, to

    recover damages for the Defendants' violations of Plaintiff's rights in or about December

    11th, 2022, rights which are protected by the constitution; and to collect debts

    [compensation] owed by Defendants to Plaintiff for value received.

## THE PARTIES

2.      Plaintiff, a non-resident; non-domicile; sentient being, was fifty six years old on December 11th, 2022; and the full time care taker of his three minor children. Although Plaintiff had been diagnosed just two months prior, in October of 2022, as a diabetic with a small brain aneurysm, Plaintiff was actively caring for Plaintiff's children full time daily.

3.      Defendants Police Officer Sergeant DYSHAWN M. PITT [shield # 02319]; Police Officer MICHAEL J. BAROZ [shield # 00265]; Police [Arresting] Officer TENZIN RIGSANG [shield # 25378]; Police Officer KEVIN BARCENAS [shield # 23572]; Police Officer NICHOLAS V. AZZOLINO [shield # 20550]; Police Officer ANDY HERRERA [shield # 27099]; and Police Officer Sergeant MICHAEL P. DUNIGAN [shield # 02985], are employees of the City of New York Police Department, as referred to herein as the "Defendants."

4.      Defendant City of New York, hereinafter "Defendant City", is a [municipal] domestic corporation which operates as a governmental corporate entity within the lower five counties of New York state, i.e., New York City.

5.      Defendant Eric Leroy Adams is the chief executive officer ("CEO") of the corporation "City of New York"

6.      Defendant Keechant Sewell was the Commissioner of the corporation's "City of New York" police department on December 11th, 2022.


**CONDITION PRECEDENT TO THIS ACTION**

7.      Notice Of Claim was properly filed with The City Of New York Comptroller's Office,

and acknowledged on March 3rd, 2023, under claim number 2023PI007071.

8.  Defendants have had ample opportunity to review; investigate; adjust; and settle this

matter without litigation.

## JURISDICTION AND VENUE

9.  Jurisdiction is proper in this district under 28 U.S.C. § 1331 in that this action arises

under the Constitution and laws of the United States, among them 42 U.S.C. § 1983.

10.  Venue is proper in this district under 28 U.S.C. § 1391(c) in that the events at issue

occurred in New York County, New York.

11.   Venue is proper in this district under 28 U.S.C. § 1391(c) in that the City of New York is

deemed to reside in this jurisdiction.

## BACKGROUND

12.  On December11th, 2022, at or about 2:20 PM, within room 1007 of the Millennium Hotel

[Plaintiff's hotel room], located at 55 Church Street in New York [County] New York,

Plaintiff was the victim of theft and assault. The perpetrator of those crimes being Lisa A.

Watkins "Ms. Watkins" [the mother of Plaintiff's children].

13.  Plaintiff left the hotel room for a meeting in Kings County. Within fifteen minutes of

leaving the hotel room Plaintiff realized that he had inadvertently left a mobile electronic

device charging in the hotel room. When Plaintiff returned to the hotel room to retrieve

the mobile electronic device, Plaintiff discovered Ms. Watkins in possession of the

mobile electronic device.

14.  Plaintiff observed Ms. Watkins place the mobile electronic device into a hip pocket of her

pants in a effort to conceal it from Plaintiff. Plaintiff requested that Ms. Watkins return the mobile electronic device several times, however, Ms. Watkins refused to hand over the mobile electronic device, while disputing that Plaintiff did not actually observed her place the mobile electronic device into her pocket. Ms. Watkins then attempted to flee that location with Plaintiff's mobile electronic device in her pocket.

15.    Plaintiff blocked Ms. Watkins exit by continuing to stand in front of her as she walked towards the door to exit the hotel room. Plaintiff continued to demand the return of the property while stating that Plaintiff would not allow her to leave the hotel room with the property.

16.    When Plaintiff was backed to the door of the hotel room, Ms. Watkins physically assaulted Plaintiff in an attempt to move Plaintiff from blocking her exit. At which time Plaintiff dialed 911 with Plaintiff's cellular telephone which Plaintiff was then using to audio and video record the incident. While on the call with a 911 operator, Ms.Watkins snatched the phone away from Plaintiff and threw it in an attempt to prevent Plaintiff from requesting police assistance.

17.    During the physical assault on Plaintiff by Ms. Watkins, Plaintiff attempted to reach into the pockets of Ms. Watkins to retrieve the stolen mobile electronic device, at which time Ms. Watkins took hold of Plaintiff's wrist and dropped herself to the floor while bringing Plaintiff down on top of her.

18.    Subsequently a hotel security officer arrived at the room, and knocked on the door at which time Plaintiff opened the door, and both Ms. Watkins and Plaintiff exited the hotel room. Plaintiff explained to the security officer the cause of the incident, at which time

Ms. Watkins removed the mobile electronic device from her pocket and threw it against a wall in an apparent attempt to destroy the device.

19.     Ms. Watkins sustained minor injuries to her right hand as a direct result of her assault on Plaintiff, which included and abrasion from punching Plaintiff, and a broken fingernail which got lodged between the screen of Plaintiff's cellular telephone, and the screen protector on that cellular telephone when Ms. Watkins snatched Plaintiff's cellular telephone and threw it. The injuries to Ms. Watkins right hand were her only injuries as Plaintiff never use force against Ms. Watkins; Plaintiff only blocked her exit.

## **FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS**

20.     At approximately 2:36 PM, four members of the City of New York Police Department, including Defendants Rigsang, and Barcenas arrived at Plaintiffs hotel room.

21.     Plaintiff was contained in Plaintiff's hotel room, and interviewed by Defendants Rigsang, and Barcenas, while Ms. Watkins was taken out of the room and interviewed in the hallway, and in Ms. Watkins hotel room [1008], by Defendants Azzolino and Herrera.

22.     At approximately 2:48 PM, Defendant Rigsang's supervisor, Defendant Pitt, arrived at the scene on the 10th floor of the Millennium Hotel. Approximately 22 minutes after his arrival, at 3:10 PM, Defendant Pitt ordered Defendant Rigsang to arrest Plaintiff.

23.     Plaintiff was handcuffed and arrested by Defendant Rigsang at approximately 3:11 PM. After Plaintiff was arrested, Defendant Pitt instructed Defendant Rigsang to interview Ms. Watkins to obtain probable cause for the arrest of Plaintiff.

24.    At approximately 3:13 PM, after Plaintiff was arrested by Defendant Rigsang, Defendant. Rigsang interviewed Ms. Watkins for the first time to develop the probable cause for the prior arrest of Plaintiff.

25.    Within approximately two minutes of interviewing Ms. Watkins, Defendant Rigsang determined that there was no probable cause to arrest Plaintiff; and Defendant Rigsang abandoned her interview of Ms. Watkins to return to Plaintiff's hotel room, at approximately 3:15 PM, to a attempt to intervene in the continued seizure of Plaintiff by communicating to Defendant Pitt that there was no probable cause to arrest Plaintiff.

26.    At that time Defendant Pitt instructed Defendant Barcenas to take Plaintiff out of the room to be transported to the Police Precinct for booking process. Defendant Pitt subsequently instructed Defendant Rigsang to continue the process as if probable cause had been obtained.

27.    Plaintiff was then taken from the Millennium hotel in handcuffs, and transported to the 1st Precinct station house by Defendants Azzolino and Herrera. As a result of Plaintiff's arrest, Plaintiff was barred from returning to the Millennium Hotel.

28.    Upon arriving at the 1st Precinct, Plaintiff's coat and top was taken by Defendants Azzolino and Herrera, and Plaintiff was locked into a cage, in a t-shirt, in an uninsulated; unheated area where the temperature dropped below thirty degrees Fahrenheit. Plaintiff asked multiple times for Plaintiff's outer clothing, and loudly complained that it was painfully cold.

29.    At or about 6:30 PM Defendant Rigsang appeared in the cell area where Plaintiff complained to Defendant Rigsang, while Defendant Dunigan was present, of the freezing

conditions, and Plaintiff's medical condition. Defendant Rigsang did nothing to address those conditions; nor was Plaintiff provided food; water; or medication.

30.    Plaintiff refused photographs and fingerprints. Instead of following the NYPD Patrol Guide procedures for individuals that refuse photographs and fingerprints, Defendant Dunigan had Plaintiff involuntarily taken to a hospital for a psychological evaluation for Plaintiff's refusal to be photographed and fingerprinted.

31.    Plaintiff was held by Defendants without food; water; and medication for approximately twenty seven hours, with approximately seventeen of those hours in freezing conditions without proper clothing.

32.    At or about 10:38 AM, December 12th, 2022, Defendant Rigsang swore, by signing, the criminal complaint and probable cause affidavit under penalty of perjury [Docket No. CR-032883-22NY]. In which Defendant Rigsang fabricated probable cause by attributing to Ms. Watkins statements that were never made to Defendant Rigsang by Ms. Watkins.

33.    Based upon the sworn affidavit of Defendant Rigsang, Plaintiff was arraigned on December 12th, 2022, at approximately 6:19 PM, on charges of PL § 120.00(1) Assault in the Third Degree; PL § 120.00(2) Assault in the Third Degree; PL § 260.10(1) Endangering the Welfare of a Child; PL § 135.05 Unlawful Imprisonment in the Second Degree; PL §§ 110/120.00(1); Attempted Assault in the Third Degree; and PL § 240.26(1) Harassment in the Second Degree.

34.    On December 12th, 2023, after Plaintiff made ten separate court appearances in the matter spanning one year, all charges were dismissed based upon insufficient evidence pursuant to CPL § 170.30(1)(f); and sealed pursuant to CPL § 160.50.

35.    As a result of the foregoing, Plaintiff sustained, *inter alia*, emotional distress; trauma;

embarrassment; humiliation; parental / custody interference; parental alienation;

homelessness; and deprivation of rights protected by the state and federal constitutions.

## **DEFENDANT RIGSANG FABRICATED PROBABLE CAUSE**

36.    The factual allegations / probable cause section of the accusatory instrument sworn by

Defendant Rigsang reads as follows:

> The factual basis for these charges are as follows:
>
> I am informed by Ms. Watkins, of an address known to the District Attorney's Office, that she observed the defendant shove and pin her onto the ground, causing abrasions, redness, and swelling to her right hand knuckle.
>
> I am further informed by Ms. Watkins that her son Trent Thomas, who was born on October 27, 2017 and her daughter Layla Thomas, who was born on March 31, 2012, was presented. I am informed that Ms. Thomas attempted to prevent the defendant from continuing to hold Ms. Watkins down by stating, "get off my mommy, give him his iPod."
>
> I am further informed by Ms. Watkins, that she and the defendant were arguing in the bedroom at the above-described location. I am further informed by Ms. Watkins that when she told the defendant that she wanted to leave the bedroom, the defendant prevented her by holding the door and pinning her to the ground. I am further informed that the defendant's above-described actions prevented her from leaving the bedroom for several minutes.

37.    In Defendant Rigsang's sworn affidavit she attributes six statements to Ms. Watkins,

which includes at least one direct quote.

38.    Defendant Rigsang's complete interview of Ms. Watkins was captured on body worn

camera "BWC."

39. Not a single statement attributed to Ms. Watkins by Defendant Rigsang was captured on the BWC interview of Ms. Watkins by Defendant Rigsang.

40. Nor could a reasonable individual of average intelligence interpreted any statement provided by Ms. Watkins to Defendant Rigsang to comport with the sworn affidavit of Defendant Rigsang.

41. On the contrary, the actual statements provided to Defendant Rigsang by Ms. Watkins, controverts the narrative as sworn by Defendant Rigsang.

42. Ms. Watkins attributes her injuries to her own actions; and she clearly states that Plaintiff's actions and motivations were solely for the purpose of retrieving stolen property that Ms. Watkins admittedly had in her possession. Additionally, **Ms. Watkins did not provide a single statement to Defendant Rigsang pertaining to the children.**

43. Defendant Rigsang knowingly, and willingly fabricated the probable cause "whole cloth" while simultaneously knowing, beyond any doubt, that Plaintiff was the victim of Ms. Watkins.

## **A COMPENSATORY DEBT IS OWED TO PLAINTIFF**

44. As a result of the actions taken without right or privilege against Plaintiff by Defendants, Plaintiff generated an affidavit and bill of exchange with payment demand, which included the invoice accounting statement, for Defendant's orders, and compelled performance, and for value received on or about December 11th, 2022, [registration # RF 407 195 112 US and; registration # RF 407 195 126 US] which was received by all

Defendants.

45.     Since 2019 Defendant City; its policymakers; and its officers have had actual or
        constructive notice of the fees for compelling, without right or privilege, Plaintiff's work;
        labor; and performance. Defendant City; its policymakers; and its officers have tacitly
        agreed to such fees.

46.     Plaintiff's bill of exchange is an "instrument for the payment of money only" within the
        meaning of Article 32 of New York Civil Practice Law Rule § 3213; an unconditional
        order to pay; a payment demand; and a negotiable instrument within the meaning of UCC
        § 3-104 for which Plaintiff is entitled to payment.

47.     Plaintiff's payment demand was delivered to all Defendants and, received by all
        Defendants without protest or rebuttal. More than forty-five (45) days have passed since
        presentment of the payment demand; no payment has been made; and the payment
        demand has been retained by all Defendants without protest.

48.     All Defendants have had ample opportunity to object, or to protest the payment demand.
        All Defendants have proven unwilling to accept responsibility, and liability for their
        actions making all good faith attempts by Plaintiff to amicably settle this matter out of
        court unavailing.


## THE MATERIAL FACTS ARE NOT IN DISPUTE

49.     Plaintiff alleges that the facts are not in dispute, that the incident of December 11th, 2022,
        were captured on the body worn cameras ("BWC") of Defendants Rigsang; Barcenas;
        Azzolino; Herrera; Pitt; and Baroz; and documented in the 911 calls; the hand written

deposition of Ms. Watkins; and in the arrest paperwork and in the criminal case file.

50.    Plaintiff alleges that it cannot be disputed that Defendants Rigsang; Barcenas; Azzolino; and Herrera knew with absolute certainty, or a high degree of certainty that Plaintiff was the victim of Ms. Watkins; and that Plaintiff had not committed any criminal offenses against Ms. Watkins; and that Plaintiff was the party that called the police to the scene to assist Plaintiff.

51.    Plaintiff alleges that it cannot be disputed that Defendants Rigsang; and Barcenas knew with absolute certainty, or a high degree of certainty that injuries sustained by Ms. Watkins were the direct results of an assault on Plaintiff by Ms. Watkins, i.e., that Ms. Watkins injured herself punching Plaintiff.

52.    Plaintiff alleges that it cannot be disputed that Defendant Rigsang attempted to halt the arrest of Plaintiff by explaining to her supervisor, Defendant Pitt, that there was no probable cause to arrest Plaintiff.

53.    Plaintiff alleges that it cannot be disputed that Defendant Rigsang knowingly fabricated statements, and falsely attributed those fabricated statements to Ms. Watkins in the probable cause affidavit / criminal complaint; and did so under the penalty of perjury.

54.    Plaintiff alleges that it cannot be disputed that Defendant Rigsang's false statements and fabricated probable cause was the direct and proximate cause of, *inter alia,* parental / custody interference complained of herein.

55.    Plaintiff alleges that it cannot be disputed that Defendant Rigsang, acting as "Arresting Officer," actively participated in; and continued the criminal prosecution of Plaintiff despite knowing with absolute certainty, or a high degree of certainty that Plaintiff had

not committed any offense; and that she fabricated the facts that formed the criminal

complaint.

56.    Plaintiff alleges that it cannot be disputed that for more than 17 hours, Plaintiff was caged

in an enclosed area of the 1st precinct station house that was not heated, and where the

temperature had dropped below thirty degrees Fahrenheit; and that while in that area,

Plaintiff was denied proper clothing, despite the fact that Plaintiff's winter coat was taken

by Defendants, and sitting on the floor just a few feet outside of that cage.

57.    Plaintiff alleges that it cannot be disputed, as it is documented on video, that within four

hours of being caged, Defendant Rigsang entered the cage area where Plaintiff

complained to her, in the presence of Defendant Dunigan, of the torturous conditions.

Plaintiff's complaints were ignored by Defendants Rigsang; and Dunigan.

58.    Plaintiff alleges that it cannot be disputed that Plaintiff was held by Defendants for

approximately twenty seven hours, and Defendants refused to provide Plaintiff with food;

water; or medications during the entirety of Plaintiff's imprisonment.

59.    Plaintiff alleges that it cannot be disputed, as it is well documented, that Defendant

Dunigan had Plaintiff involuntarily submitted to a hospital for a psychiatric evaluation

solely for the purpose of compelling Plaintiff to submit to photographing and

fingerprinting; and without reasonable cause to believe that Plaintiff had psychiatric

disabilities and was a danger to self or others.

60.    Plaintiff alleges that it cannot be disputed that upon returning to the 1st precinct station

house from the aforementioned psychiatric evaluation; Plaintiff did submit to

photographing and fingerprinting under threat; duress; and coercion; and that Plaintiff did

informed Defendant Dunigan of the fees for such compelled performance.

61.    Plaintiff alleges that it cannot be disputed that from the onset of the arrival of police officers at 55 Church Street, Defendants treated Plaintiff as the perpetrator of a crime even before learning any facts; containing Plaintiff in room 1007 while allowing Ms. Watkins to move freely between room 1008, and the hallway, unsupervised without being contained in her room.

62.    Plaintiff alleges that it cannot be disputed that Plaintiff was the victim of crimes committed by Ms. Watkins, and that Plaintiff called for police assistance. But because of Plaintiff's gender, Defendants Pitt; Baroz; Rigsang; and Barcenas converted the victim to the perpetrator; and the perpetrator to the victim, unlawfully arresting Plaintiff in the clear absence of probable cause of a crime, or arguable probable cause of a crime, in violation of Plaintiff's rights protected under the constitution.

63.    Plaintiff alleges that it cannot be disputed that Defendants Azzolino and Herrera knew, or should have known, all of the facts as stated herein, yet failed to intervene when they had the opportunity, and obligation to do so; and are equally liable for the violations of Plaintiff's rights protected under the constitution.

64.    Plaintiff alleges that it cannot be disputed that all criminal charges made against Plaintiff by Defendant Rigsang were dismissed in Plaintiff's favor due to a lack of evidence, as Plaintiff had not committed any crime, or offense.

65.    Plaintiff alleges that it cannot be disputed that Plaintiff is not, and was not, a member of the corporate body politic on December 11th, 2022, and Plaintiff owed no duty to Defendant City; nor was Plaintiff obligated to perform for Defendant City or its agency

without compensation; and as a matter of right it is Plaintiffs prerogative to assess fees to

and against  Defendant City for compelled performance and value received.

<u>**AS AND FOR A FIRST CAUSE OF ACTION**</u>
<u>**FALSE ARREST FALSE IMPRISONMENT**</u>

**42 U.S.C. § 1983 and Fourth and Fourteenth Amendments**
**Against Defendants Pitt; Baroz; Rigsang; and Barcenas**
**In Their Individual And Corporate Capacity**

66.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs "1" through "65" with the same force and effect as if fully set forth herein.

67.    By their conduct, as described herein, and acting under color of state law to deprive

Plaintiff of his rights to be free from unreasonable searches and seizures and arrests

without reasonable suspicion or probable cause as required by the Fourth and Fourteenth

Amendments which prohibits the deprivation under color of state law of rights secured

under the United States Constitution.

68.    The actions complained of herein were carried out by the aforementioned Defendants in

their capacities as law enforcement officers, with the entire actual and / or apparent

authority attendant thereto.

69.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered,

and will continue to suffer damages including mental and emotional injury and pain,

mental anguish, suffering, humiliation and embarrassment; parental / custody

interference; parental alienation; homelessness; and deprivation of rights protected by the

state and federal constitutions.

70.     As a result of the foregoing, Plaintiff has been damaged and demands compensatory and

punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## MALICIOUS PROSECUTION

**42 U.S.C. § 1983 and Fourth and Fourteenth Amendments**
**Against Defendant Rigsang In Her Individual And Corporate Capacity**

71.　Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72.　Acting under color of state law, Defendant Rigsang brought charges against Plaintiff without probable cause of a crime, and without arguable probable cause of a crime at such time as she knew; or should have known there was no probable cause of a crime, nor arguable probable cause of a crime, and Plaintiff was subject to post-arraignment deprivation.

73.　With knowledge and forethought, Defendant Rigsang willingly manufactured probable cause of crimes through fabrications and omissions, with knowledge of the same; Defendant Rigsang's unlawful acts were not mistakes of fact, nor mistakes of law, but intentional acts to deprive Plaintiff of due process; to injure; and / or to deprive Plaintiff of rights protected under the Fourth, and Fourteenth Amendments, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

74.　Defendant Rigsang defended, and continued the prosecution of Plaintiff for the duration of the criminal case with the knowledge that she fabricated the probable cause; and with

the knowledge that Plaintiff had committed no crimes or offenses. Defendant Rigsang initiated, and pursued criminal prosecution against Plaintiff without good cause; and without legal justification.

75. The criminal prosecution of Plaintiff terminated in Plaintiff's favor on December 12th, 2023, due to a lack of evidence as there existed no evidence that Plaintiff had committed any crime or offense against anyone.

76. As a direct and proximate result of Defendant Rigsang's unlawful actions, Plaintiff has suffered, and will continue to suffer damages including mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment; parental / custody interference; parental alienation; homelessness; and deprivation of rights protected by the state and federal constitutions.

77. As a result of the foregoing, Plaintiff has been damaged and demands compensatory and punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**42 U.S.C. § 1983 Against Defendants Dunigan; Pitt; and Rigsang
In Their Individual And Corporate Capacity**

78. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs number "1" through "77" with the same force and effect as if fully set forth herein.

79. Defendants Pitt; and Rigsang acting under color of state law intentionally inflicted emotional distress upon Plaintiff without good cause, and with knowledge that Plaintiff

had committed no crime, and was in fact the crime victim.

80.     As a direct and proximate result of Defendants Pitt; and Rigsang's actions, Plaintiff has

suffered, and will continue to suffer damages including mental and emotional injury and

pain, mental anguish, suffering, humiliation and embarrassment; parental / custody

interference; parental alienation; homelessness; and deprivation of rights protected by the

state and federal constitutions.

81.     As a result of the foregoing, Plaintiff has been damaged and demands compensatory and

punitive damages.


### AS AND FOR A FOURTH CAUSE OF ACTION
### DEPRIVATION OF FOOD; WATER; MEDICATION; AND CLOTHING

**42 U.S.C. § 1983 and Eighth and Fourteenth Amendments**
**Against Defendants Dunigan; Rigsang; Azzolino; and Herrera**
**In Their Individual And Corporate Capacity**

82.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs number "1" through "81" with the same force and effect as if fully set forth

herein.

83.     Defendants Dunigan; Rigsang; Azzolino; and Herrera acting under color of state law of

denied to Plaintiff food; water; and diabetic medication during approximately twenty

seven hours of pre-trial imprisonment, with approximately seventeen of those twenty

seven hours being in freezing conditions without proper clothing.

84.     Defendants knew or should have known of Plaintiff's health and the conditions of

Plaintiff's imprisonment, and Defendant's obligations to provide for Plaintiff's basic

human needs.

85.  As a direct and proximate result of Defendants Dunigan; Rigsang; Azzolino; and

Herrera's actions and failures to act, Plaintiff has suffered, and will continue to suffer

damages including mental and emotional injury and pain, mental anguish, suffering,

humiliation and embarrassment; and deprivation of rights protected by the state and

federal constitutions.

86.   As a result of the foregoing, Plaintiff has been damaged and demands compensatory and

punitive damages

.

## AS AND FOR A FIFTH CAUSE OF ACTION
## INVOLUNTARY PSYCHIATRIC EVALUATION

### 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments
### Against Defendant Dunigan In His Individual And Corporate Capacity

87.  Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs "1" through "86" with the same force and effect as if fully set forth herein.

88.  By his conduct, as described herein, Defendant Dunigan acting under color of state law to

deprive Plaintiff of his rights to be free from the unreasonable seizure of a person for an

emergency mental health evaluation which is governed by Fourth Amendment

reasonableness; probable cause is required to support a seizure for a psychiatric

evaluation; probable cause means cause to believe that the individual poses a danger to

himself or others.

89.  As a direct and proximate result of Defendant Dunigan's unlawful actions, Plaintiff has

suffered, and will continue to suffer damages including mental and emotional injury and

pain, mental anguish, suffering, humiliation and embarrassment; and deprivation of rights

protected by the state and federal constitutions.

90.      As a result of the foregoing, Plaintiff has been damaged and demands compensatory and

punitive damages.


WHEREFORE, Plaintiff demands judgment and prays for the following relief,

jointly and severally, against all Defendants:

A.      A declaration that Defendants' conduct violated Plaintiff's rights that are protected

by the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution;

B.      Full compensation in the amount of fees owed to Plaintiff for value received;

C.      Punitive damages in an amount to be determined by a jury;

D.      Costs and disbursements; and,

E.      Such other and further relief as appears just and proper.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury under the laws of the united

states of America that the foregoing is true and correct.


Dated:   Kings County, New York
          April 1st, 2024


**Shawn Randall Thomas, Sui Juris**
**c/o A.M.R.**
**309 Lafayette Avenue, Suite 21G**
**Kings County New York [11238]**
**srandallthomas@email.com**
**917-727-9194**

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a non-frivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support

after a reasonable opportunity for further investigation or discovery; and (4) the complaint

otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers

may be served. I understand that my failure to keep a current address on file with the Clerk's

Office may result in the dismissal of my case.

Date of signing: April 1st, 2024.

Signature of Plaintiff _D. Randall Thomas_____

Printed Name of Plaintiff  Shawn Randall Thomas_____

# For Service

## *PLAINTIFF*

**Shawn Randall Thomas**, Sui Juris
c/o A.M.R.
309 Lafayette Avenue, Suite 21G
Kings County New York [11238]
srandallthomas@email.com
917-727-9194

## *DEFENDANTS*

**CITY OF NEW YORK**
City of New York Corporation Counsel
100 Church Street
New York, New York, 10007
100 Church Street
Phone: (212) 356-1000
Fax: (212) 356-1148
Email: ServiceECF@law.nyc.gov

**Eric Leroy Adams**, Mayor
City of New York Corporation Counsel
100 Church Street
New York, New York, 10007
100 Church Street
Phone: (212) 356-1000
Fax: (212) 356-1148
Email: ServiceECF@law.nyc.gov

**Keechant Sewell**
Former Commissioner,
City of New York Police Department
19 Jasper Street
Valley Stream, New York 11580

**Dyshawn M. Pitt**
City of New York Police Officer
shield # 02319, tax ID # 949492
1st Precinct

16 Ericsson Place
New York, NY, 10013

**Michael J. Baroz**
City of New York Police Officer
shield # 00265, tax ID # 963393
1st Precinct
16 Ericsson Place
New York, NY, 10013

**Tenzin Rigsang**
City of New York Police Officer
shield # 25378, tax ID # 971198
Queens Warrant Squad
80-45 Winchester Blvd.
Queens Village, NY 11427

**Kevin Barcenas**
City of New York Police Officer
shield # 23572, tax ID # 970987
Military & Extended Leave Desk
646-610-5434

**Nicholas V. Azzolino**
City of New York Police Officer
shield # 20550, tax ID # 964903
1st Precinct
16 Ericsson Place
New York, NY, 10013

**Andy Herrera**
City of New York Police Officer
shield # 27099, tax ID # 971997
6th Precinct
233 West 10th Street
New York, NY, 10014

**Michael P. Dunigan**
City of New York Police Officer
shield # 02985, tax ID # 948921
1st Precinct
16 Ericsson Place
New York, NY, 10013